IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **DONNA MARCUM**, on behalf of herself and all others similarly situated, | ) ) CASE NO. 3:19-cv-231-GNS-LLK ) |
| Plaintiff, | ) **CHIEF JUDGE GREG N. STIVERS** ) |
| v. | ) **MAGISTRATE JUDGE LANNY KING** ) |
| **LAKES VENTURE, LLC, d/b/a FRESH THYME FARMERS MARKET LLC,** | ) **JOINT MOTION FOR APPROVAL OF** ) **FLSA COLLECTIVE ACTION** ) **SETTLEMENT** ) |
| Defendant. | ) |

Representative Plaintiff Donna Marcum ("Representative Plaintiff") and Defendant Lakes Venture, LLC d/b/a Fresh Thyme Farmers Market, LLC ("Fresh Thyme" or "Defendant") (collectively, the "Parties") respectfully move this Court for an Order approving their Fair Labor Standards Act ("FLSA") settlement. The settlement was reached by experienced wage and hour counsel during arms-length, good faith negotiations that included the assistance of a private mediator.

The following documents are submitted for the Court's approval:

**Exhibit 1**: Collective Action Settlement Agreement and Release (the "Agreement"), as well as **Exhibit A** (Notice of Settlement), **Exhibit B** (Opt-In Plaintiffs), and **Exhibit C** (Approval Order) of the Agreement; and

**Exhibit 2**: Declaration of Robi J. Baishnab.

**MEMORANDUM IN SUPPORT**

I.  PROCEDURAL AND FACTUAL BACKGROUND.

    A.  Summary of the Procedural History.

On March 28, 2019, Representative Plaintiff filed this action in the United States District Court for the Western District of Kentucky, on behalf of herself and a putative class of alleged

1

similarly situated employees, in which Representative Plaintiff asserted collective and class claims alleging, inter alia, that Defendant failed to pay her and all similarly situated employees overtime for all hours worked in excess of 40 in a workweek in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"). Specifically, Representative Plaintiff asserted claims for unpaid overtime, arising from Defendant's alleged lunch break policy that allegedly caused Representative Plaintiff and Opt-in Plaintiffs (collectively "Plaintiffs") to perform compensable work through unpaid 30-minute lunch breaks which allegedly resulted in overtime violations in weeks worked in excess of 40 hours.[1]

On June 3, 2019, Defendant filed its Answer, in which it denied and continues to deny all material allegations asserted in the action, further denied that it violated the FLSA or any other law, and asserted numerous affirmative defenses to those claims.[2]

On November 24, 2020, the Court conditionally certified the following collective class: "All current and formerly hourly employees of Defendant who worked over 40 hours in any workweek and were not fully compensated for all hours worked because they were unable to take an uninterrupted meal break of thirty (30) minutes."[3]

On July 22, 2021, the Parties mediated before third-party neutral, Mike Ungar, at which time they reached a settlement, and filed their Notice of Settlement on July 30, 2021.[4] At the time of settlement, 561 individuals, including Representative Plaintiff, had joined the case.[5]

---

[1] ECF No. 1.

[2] ECF No. 12.

[3] ECF No. 42. *See also* ECF No. 56.

[4] ECF No. 72.

[5] ECF Nos. 1, 57-63, and 65-71.

      C.      <u>Summary of the Key Settlement Terms</u>.

In advance of mediation, Defendant produced timecard reports, dates of employment, and rates of pay for the 561 party-plaintiffs. Plaintiffs' Counsel engaged the services of a PhD economist to construct a damages model. The model was built by comparing hours worked and wages paid, including providing the use of a toggle to input estimated unpaid time per week. The model was shared with Defendant.[6] Additionally, in preparation for mediation, Plaintiffs' counsel interviewed a random selection of Opt-in Plaintiffs, obtaining approximately 29 declarations from Opt-Ins working at 9 out of 11 states in which Fresh Thyme operated, such as Illinois, Indiana, Iowa, Missouri, Michigan, Minnesota, Nebraska, Ohio, and Wisconsin.[7]

The total settlement amount is **$345,000.00**.[8] This amount includes: (1) all Settlement Awards (defined below); (2) any Service Payment approved for Representative Plaintiff; (3) all Plaintiffs' Counsel's attorneys' fees and litigation expenses approved by the Court; and (4) the Settlement Administrator's costs. The total settlement amount does not include Defendant's share of the payroll taxes for payments made as W-2 wages under the terms of the Agreement.[9]

A Notice of Settlement (attached as Exhibit A to the Agreement) will be sent to the Plaintiffs with their settlement payments.[10]

---

[6] Baishnab Decl. at ¶ 18.

[7] *Id*. at ¶ 19.

[8] Settlement Agreement at ¶ 14.

[9] *Id.*

[10] *Id*. at ¶¶ 16 and 40.

In exchange for the total settlement amount payment and other consideration provided for in the Agreement, this lawsuit will be dismissed with prejudice, and Plaintiffs will provide releases as outlined in the Agreement.[11]

Individual settlement payments will be calculated by the Settlement Administrator and shall be the individual's *pro rata* share of the Net Settlement Fund based on the number of workweeks worked by the Plaintiff during the Covered Period in comparison to the total number of workweeks worked by all Plaintiffs during the Covered Period. If a Plaintiff does not have a least one workweek during the Covered Period, he or she will receive credit for one workweek.[12]

    D.    <u>The Total Settlement Amount is Fair and Reasonable and Based on Plaintiffs' Counsel's Estimated Value of the Claims.</u>

Plaintiffs' Counsel facilitated mediation with the damages model created by Plaintiffs' Economist. The settlement reflects substantial benefit to the 561 Plaintiffs. For example, the individual settlement payments reflect approximately 53 additional minutes of unpaid time or almost two full 30-minute lunch periods per week.[13]

Further, before and throughout mediation, Plaintiffs' Counsel spent a significant amount of time doing expected value calculations, using a decision tree software called TreeAge Pro$^{©}$. (Defendant did not use this software.) In these calculations, Plaintiffs' Counsel analyzed each potential risk of loss (i.e., decertification, summary judgment, mass arbitration, good-faith, willfulness, etc.) and assigned probability values to each potential risk. The probability values were collectively valued by a near-randomized process of averaging good-faith subjective estimates from two to three attorneys. The decision tree software then compounded each of the probability

---

[11] *Id.* at ¶¶ 20 and 52-54.

[12] *Id.* at ¶¶ 26 and 39.

[13] Baishnab Decl. at ¶ 23.

values and applied those values to the damages model. This exercise allowed Plaintiffs' Counsel to fully appreciate the entire risk picture and economic value of the case collectively. The total settlement exceeded the calculated expected value, supporting Plaintiffs' Counsel's opinion that the settlement recovery is not just fair and reasonable, it is exceptional.[14]

II.   PROPRIETY OF APPROVAL OF THE SETTLEMENT.

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. Court approval is warranted on all scores.

   A.   The Seven-Factor Standard is Satisfied.

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness."[15] As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'"[16] The Sixth Circuit uses seven factors to evaluate class action settlements, which are:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.[17]

---

[14] *Id*. at ¶ 24.

[15] *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir.1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute").

[16] *Crawford v. Lexington-Fayette Urban County Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *13 (E.D. Ky. Oct. 23, 2008).

[17] *UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007)); *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *13-14.

The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case."[18] The Settlement in this case satisfies each of these elements.

1. *No Indicia of Fraud or Collusion Exists.*

There is no indicia of fraud or collusion, and "the court may presume that no fraud occurred and that there was no collusion between counsel."[19] This case was filed nearly two and a half years ago.[20] There are bona fide disputes as to whether the case can proceed collectively, whether many of the Plaintiffs are bound by enforceable arbitration agreements, whether the alleged unpaid meal-break time was compensable or *de minimis*, whether liquidated damages were appropriate, and whether a two- or three-year statute of limitations would apply.[21]

The Parties vigorously advocated their respective positions through multiple fully-briefed motions.[22] The Agreement was achieved only after arms-length and good faith negotiations between the Parties, with the assistance of a neutral third-party mediator after a full day mediation.[23] As such, there is no indicia of fraud or collusion, and this factor favors approval of the settlement.

---

[18] *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *14 (citing *Redington v. Goodyear Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 64639, 2008 WL 3981461, at *11 (N.D. Ohio August 22, 2008)) (further citation omitted).

[19] *Crawford,* 2008 U.S. Dist. LEXIS 90070, at *20 (citing *Redington*, 2008 U.S. Dist. LEXIS 64639, [WL] at *18) (further citation omitted).

[20] ECF No. 1.

[21] Baishnab Decl. at ¶ 25.

[22] *See e.g.* ECF Nos. 16, 20-22, 25, 28-30, 34, 37-40, 42-43, 45, 47, 50, 53, and 55-56.

[23] Baishnab Decl. at ¶ 26.

2. *The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval.*

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming.[24] Opposed motion practice included conditional certification and hearing, extensions of time, and for stay and for certification for interlocutory appeal.[25] The Settlement Collective consists of 561 individuals, of which Plaintiffs' counsel interviewed a random selection of Opt-in Plaintiffs, obtaining approximately 29 declarations from Opt-Ins working at 9 out of 11 states in which Fresh Thyme operated, such as Illinois, Indiana, Iowa, Missouri, Michigan, Minnesota, Nebraska, Ohio, and Wisconsin.[26]

Assessing unpaid lunch claims can be very fact intensive, and if this case had not settled, the Parties would be required to engage in costly litigation and discovery spanning multiple states, including written discovery, depositions, and possibly expert time studies. The Settlement, on the other hand, provides substantial relief to the Plaintiffs promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution.[27]

3. *Investigation Was Sufficient to Allow the Parties to Act Intelligently.*

The Parties engaged in substantial investigation and analysis prior to negotiating the Settlement. As mentioned above, Defendant produced relevant time and pay data for the 561 party-plaintiffs. This data was analyzed by Plaintiffs' Counsel and by the PhD economist they engaged

---

[24] *See, Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *8 (S.D. Ohio Aug. 17, 2018) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (citations omitted).

[25] *See e.g.* ECF Nos. 16, 20-22, 25, 28-30, 34, 37-40, 42-43, 45, 47, 50, 53, and 55-56.

[26] Baishnab Decl. at ¶¶ 18-19.

[27] *Id.* at ¶ 7.

to build the damages model, which was shared with Defendant's counsel and the mediator. The Parties had the ability to toggle estimated unpaid time and compare multiple damage estimates according to the respective statutory period and certain presumptions and extrapolations.[28] Also mentioned above, Plaintiffs' Counsel randomly interviewed and obtained declarations from Plaintiffs who were employed in more than 81% of the states in which Defendant operates.[29]

        4.    *The Risks of Litigation Favor Approval*.

The settlement represents a compromise of disputed claims. Specifically, Representative Plaintiff alleged a company-wide policy and practice of requiring employees to work through unpaid lunches. On the other hand, Defendant disputes all of these claims and asserted a number of defenses, which it expected to assert through discovery and continued litigation. The Parties also disagree about to whether the case can proceed collectively, whether many of the Plaintiffs are bound by enforceable arbitration agreements, whether the alleged unpaid meal-break time was compensable or *de minimis*, whether liquidated damages were appropriate, and whether a two- or three-year statute of limitations would apply.[30]

For example, individual settlement payments reflect approximately 53 additional minutes of unpaid time or almost two full 30-minute lunch periods per week.[31] It also *exceeds* the expected value calculated by Plaintiffs' Counsel. This is an excellent result. Accordingly, if this case had

---

[28] *Id*. at ¶ 18.

[29] *Id*. at ¶ 19.

[30] *Id*. at ¶ 25.

[31] *Id*. at ¶ 23.

not settled, recovery could have been much lower, and it is possible that there would be no recovery for the Plaintiffs at all.[32]

### 5. The Opinion of Plaintiffs' Counsel Favor Approval.

"In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference."[33] Plaintiffs' Counsel is highly experienced in wage-and-hour collective and class actions. At all times, they have acted in good faith and have vigorously represented the Plaintiffs' interests. And by performing the expected value analysis, Plaintiffs' Counsel was able to fully appreciate the entire risk picture and economic value of the case collectively and is of the opinion that the Settlement is an exceptional outcome.[34] Accordingly, this factor favors approval of the Settlement.

### 6. The Reaction of Absent Class Members.

In this case, there are no absent class members. By submitting their Consent to Join forms, which have been filed with the Court, each Plaintiff has already agreed to join this case and be bound any settlement approved by the Court.[35]

### 7. The Public Interest.

This matter concerned vigorously disputed FLSA claims and "the law generally favors and

---

[32] *Id.* ¶ 24.

[33] *Burnham v. Papa John's Paducah, LLC*, 2020 WL 2065793, at *3 (W.D. Ky. 2020) (further citation omitted).

[34] Baishnab Decl. at ¶¶ 3-13, and 24.

[35] Baishnab Decl. at ¶ 17.

9

encourages the settlement of class actions."[36] Settlement confers immediate benefits on the Plaintiffs, avoids the risks and expense in further litigation, and conserves judicial resources. Thus, the Court should find that this factor supports approval of the Settlement.

      B.    <u>The Settlement Distributions Are Fair, Reasonable and Adequate</u>.

In addition to evaluating the seven factors discussed above, the Court must also "ensure that the distribution of the settlement proceeds is equitable."[37]

      1.    *The Individual Payments are Reasonable and Adequate*.

As mentioned above, individual settlement payments will be calculated by the Settlement Administrator, and shall be the individual's *pro rata* share of the Net Settlement Fund based on the number of workweeks worked by the Plaintiff during the Covered Period in comparison to the total number of workweeks worked by all Plaintiffs during the Covered Period. If a Plaintiff does not have a least one workweek during the Covered Period, he or she will receive credit for one workweek.[38]

As outlined above, the total settlement amount reflects approximately more than 53 minutes of unpaid time per week, and it also exceeds the calculated expected value.[39] These calculations support Plaintiffs' Counsel experiential opinion that the proposed Settlement is fair, adequate, and reasonable.

---

[36] *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981), *on reh'g*, 670 F.2d 71 (6th Cir. 1982) (internal quotations omitted); and *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *30-31 (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1353) (further citation omitted).

[37] *Crawford,* 2008 U.S. Dist. LEXIS 90070, at *31 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855, 119 S. Ct. 2295, 144 L. Ed. 2d 715).

[38] Settlement Agreement at ¶¶ 26 and 39.

[39] Baishnab Decl. at ¶ 23.

### 2. Representative Plaintiff's Service Award is Proper and Reasonable.

The Agreement provides for a service award of $5,000.00 to Representative Plaintiff, in addition to her individual settlement payment.[40] "Larger awards to named plaintiffs and to those plaintiffs participating extensively in the litigation and discovery are common in class actions," because "[s]uch awards reflect the additional burdens of time, exposure, risk, and expense that these plaintiffs incurred during the course of the litigation."[41]

Here, Plaintiffs' Counsel believe that the Representative Plaintiff contributed significant time, effort, and detailed factual information enabling Plaintiffs' Counsel to evaluate the strength of this case and reach a settlement of this matter. Plaintiffs' Counsel believe that she put her name on the line and endured this protracted litigation alone since March 2019. In addition, Representative Plaintiff agreed to a general release, with limited exceptions, against Defendant in exchange for her service payment. And, by entering into the Settlement and joining this Motion Defendant does not oppose the requested servicer award.[42]

### 3. The Attorney Fees to Plaintiffs' Counsel Are Proper and Reasonable.

After the Court has confirmed that the terms of settlement are fair to the Plaintiffs, it may review the Agreement as to the provision of fees and costs to Plaintiffs' Counsel.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the

---

[40] Agreement at ¶ 34.

[41] *Crawford*, 2008 U.S. Dist. LEXIS 90070, at *33 (citing *Hopson v. Hanesbrands, Inc.*, 2008 U.S. Dist. LEXIS 86342, 2008 WL 3385452 (N.D. Cal. 2008); *Quintanilla v. A&R Demolition*, 2008 U.S. Dist. LEXIS 37449, 2007 WL 5166849 (S.D. Tex. 2007); *Camp v. The Progressive Corp.*, 2004 U.S. Dist. LEXIS 19172, 2004 WL 2149079 (E.D. La. 2004); and *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 535 (E.D. Mich., 2003)).

[42] Agreement at ¶ 27; Baishnab Decl. at ¶ 28.

11

action."[43] In *Fegley v. Higgins*, the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights."[44]

The Agreement provides a payment of attorneys' fees to Plaintiffs' Counsel in the amount of $115,000, or one-third of the total settlement amount. Courts have discretion when assessing the award of attorney's fees, and this Court has recognized that "district courts in this Circuit have found a one-third fee award to be appropriate in similar [FLSA] cases."[45]

Here, application of the percentage of fund approach and approval of one-third fees is appropriate. For example, one-third is agreed to by the Parties.[46] Approving the requested one-third fees promotes judicial economy, because:

> The percentage of the fund method has a number of advantages: it is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation . . . the lodestar method has been criticized for being too time-consuming of scarce judicial resources . . . District courts must pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier. With the

---

[43] 29 U.S.C. § 216(b).

[44] *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.1994), *cert. denied*, 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

[45] *Jones v. H&J Rests.*, No. 5:19-CV-105-TBR, 2020 U.S. Dist. LEXIS 219071, at *17 (W.D. Ky. Nov. 20, 2020) (citing *Ware v. CKF Enters., Inc.*, No. 5:19-183-DCR, 2020 WL 2441415, at *16 (E.D. Ky. May 12, 2020) (collecting cases) ("[C]ourts within this circuit have found one-third common fund attorney's fee awards to be reasonable in similar complex failure-to-pay-overtime cases."); *Davis v. Omnicare, Inc.*, No. 5:18-CV-142-REW, 2021 U.S. Dist. LEXIS 63014, at *34 (E.D. Ky. Mar. 30, 2021) ("As a threshold matter, an award of one-third of a gross-settlement fund is consistent with other, similar awards."); and *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) ("An award of 33% of the total settlement fund is well within the range of fees requested in class and collective actions in Ohio federal district courts.").

[46] Agreement at ¶ 32-33.

emphasis it places on the number of hours expended by counsel rather than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement."[47]

Additionally, the Settlement Collective "will benefit from a relatively quick and adequate settlement, this percentage would incentivize attorneys to take such cases without providing class counsel with a windfall."[48] Further, Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs, and expenses.[49] Thus, Plaintiffs' Counsel "assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award."[50] By entering into settlement and joining this Motion, Defendant does not oppose the requested fees.[51]

      4.      *The Court Should Authorize Reimbursement to Plaintiffs' Counsel of Their Out-of-Pocket Expenses Incurred in This Case.*

Plaintiffs' Counsel should also be reimbursed their litigation expenses, which as of the date of this Motion are $19,763.72. These costs include postage, service, FLSA Notice, creation of the damages model, filing fees, *pro hac vice* fees, and other litigation costs.[52] "Like attorney's fees, an award of costs to prevailing parties is mandatory under the FLSA."[53] In fact, "[e]xpense awards

---

[47] *Jones*, 2020 U.S. Dist. LEXIS 219071, at *16 (citing *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516-517 (6th Cir. 1993).

[48] *Ware*, 2020 U.S. Dist. LEXIS 82879, at *44.

[49] Baishnab Decl. at ¶ 29.

[50] *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *19 (S.D. Ohio Dec. 3, 2019); and *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 936 (N.D. Ohio 2003) (Contingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery.") (further citation omitted).

[51] Baishnab Decl. at ¶ 29.

[52] *Id.* at ¶ 30.

[53] *Davis*, 2021 U.S. Dist. LEXIS 63014, at *37 (citing § 216(b)) (further citation omitted).

are customary when litigants have created a common settlement fund for the benefit of a class."[54] Because Plaintiffs' Counsel's litigation expenses were incurred in the prosecution of the claims in this case and in obtaining settlement, the Court should award reimbursement of these expenses to Plaintiffs' Counsel. Additionally, Settlement Administration costs of $10,000 will be deducted from the fund. Defendant does not oppose the requested reimbursement of costs.[55]

III.  CONCLUSION.

The Parties submit that this settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the proposed Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal With Prejudice;[56] (2) approve Plaintiffs' Counsel's request for attorney fees and expenses; (3) approve the requested service payment; and (4) retain jurisdiction to enforce the settlement if necessary.

---

[54] *Rikos v. P&G*, No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at *27 (S.D. Ohio Apr. 30, 2018) (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 535); and *Sweetwater Valley Farm, Inc. v. Dean Foods Co.* (*In re Se. Milk Antitrust Litig.*), No. 2:08-MD-1000, 2018 U.S. Dist. LEXIS 131855, at *22 (E.D. Tenn. July 11, 2018) (citing *In re F&M Distribs., Inc. Sec. Litig.*, 1999 U.S. Dist. LEXIS 11090, *19 (E.D. Mich. June 29, 1999).

[55] Baishnab Decl. at ¶ 30.

[56] Attached as Exhibit C to the Agreement.

Respectfully submitted,

*/s/ Robi J. Baishnab*
Robi J. Baishnab (0086195)*
**NILGES DRAHER LLC**
1360 E. 9th St., Suite 808
Cleveland, OH 44114
Telephone: (216) 230-2955
Facsimile: (330) 754-1430
Email: rbaishnab@ohlaborlaw.com

Shannon M. Draher (0074304)*
Hans A. Nilges (0076017)*
**NILGES DRAHER LLC**
7266 Portage Street, N.W., Suite D
Massillon, OH 44646
Telephone: (330) 470-4428
Facsimile: (330) 754-1430
Email: hans@ohlaborlaw.com
        sdraher@ohlaborlaw.com

Matthew J.P. Coffman (0085586)*
**COFFMAN LEGAL, LLC**
1550 Old Henderson Road
Suite 126
Columbus, Ohio 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com

Daniel I. Bryant (0090859)*
**BRYANT LEGAL, LLC**
1550 Old Henderson Road
Suite 126
Columbus, Ohio 43220
Phone: 614-704-0546
Fax: 614-573-9826
Email: dbryant@bryantlegalllc.com

*(*admitted pro hac vice*)*

*Attorneys for Plaintiffs*

*/s/ Mark A. Knueve (with permission)*
Mark A. Knueve (0067074)
Natalie M. McLaughlin (0082203)
**Vorys, Sater, Seymour And Pease LLP**
52 East Gay Street
Columbus, Ohio 43215
(614) 464-66387 - Telephone
(614) 719-4788 - Facsimile
maknueve@vorys.com
nmmclaughlin@vorys.com

*Attorneys for Defendant Lakes Venture, LLC d/b/a as Fresh Thyme Farmers Market*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed for service via the Court's CM/ECF system on this August 26, 2021. Parties may access this filing through the Court's system.

/s/ *Robi J. Baishnab*
Robi J. Baishnab

*Attorney for Plaintiffs*